IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTIAN BERTOLI, et al.,

                Plaintiffs,

      v.

WACHOVIA CORP., FSB, et al.,

                Defendants.

NO. C11-03432 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS, AND
DENYING MOTION TO STRIKE

      This motion comes before the Court on Defendant Wachovia's motion to dismiss the Plaintiffs' complaint in its entirety, and further motion to strike paragraphs 21 and 34 of the complaint, and paragraph 3 of the Plaintiffs' prayer for relief. Having carefully considered the arguments contained in the parties' briefs, and further considered the arguments raised by the parties at the hearing of October 24, 2011, the Court now GRANTS IN PART and DENIES IN PART the motion to dismiss the complaint, and DENIES the motion to strike portions of the complaint.

**BACKGROUND**

      In October of 2007, Plaintiffs Christian and Patti Bertoli ("Plaintiffs" or "the Bertolis") applied for a primary residential mortgage through World Savings Bank, a federal savings bank, renamed Wachovia Mortgage in December of 2007, and currently a subsidiary of Wells Fargo. ("Defendant" or "the bank"). The total amount of the loan was $1,008,000. The bank sold the Bertolis a fixed-rate loan with a choice of monthly payment amount, called the "Pick-A-Payment Loan." Under this plan, the borrower was presented with a choice of four different payment amounts from which to choose.

      Though the bank did provide the borrower with documents disclosing the differences between the payment choices and explaining that selecting the minimum could result in

negative amortization of the loan, this information does not appear to have been explicitly provided on the required Truth in Lending Disclosure Statement ("TILDS").  The differences between payment choices–or the negative consequences that could arise from selecting the minimum–were discussed in the Deferred Interest Acknowledgment Disclosure ("DIAD"), a second document provided by the bank, to which the TILDS contains a reference.

The Bertolis realized the problem with their loan when they received their first monthly mortgage statement, which, according to the Complaint, was the first document clearly noting that the minimum payment would be insufficient to pay the interest, and therefore would result in negative amortization, and, ultimately, loss of equity.

When Plaintiffs became aware of the problem with their loan, there were already multiple suits pending against the Defendant, arising from the disclosure problems the Bertolis had encountered.  These cases were consolidated and ultimately certified as a class action, from which Plaintiffs opted out. At present, Plaintiffs have not defaulted on their loan, but are bringing suit against the bank, alleging violations of the Truth In Lending Act ("TILA"), Cal. Bus. & Prof. Code section 17200, breach of contract, breach of the covenant of good faith and fair dealing, and fraud.

**LEGAL STANDARD**

*Motion To Dismiss*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." This failure may be based on the absence of a cognizable legal theory, or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare System*, 534 F.3d 1116, 1121 (9th Cir. 2008).  In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which

2

the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir.2008).

Courts must generally "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.2007), and further accept as true all reasonable inferences which can be drawn from the facts alleged. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009) (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 550. Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.1998).

*Motion to Strike*

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)**.**

3

**DISCUSSION**

*Motion To Dismiss*

1. Claims Based On Statutes Of Limitations

Defendant argues that the fraud claim, the TILA claim, and the breach of contract claim are all barred by their respective statutes of limitations. However, Plaintiffs note that their involvement in the class action should make them eligible for equitable tolling. According to counsel, the plaintiffs realized there was a problem with their loan upon receiving their first mortgage statement, after the numerous suits arising from this lending scheme were consolidated in 2008.

Generally, statutes of limitations are tolled for all individuals who would be eligible for class membership from the commencement of a class action suit until the class certification is denied or the individual chooses to opt out. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551–552, (1974). Here, though the class was not certified until 2010, the commencement of multiple suits against the Defendant and 2008 consolidation of these suits served as notice to the Defendant of the existence and nature of the potential plaintiff class, which is the concern on which courts have focused in determining whether or not equitable tolling should apply. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 345-346 (1983). Accordingly, the Plaintiffs in this case shall be allowed to take advantage of equitable tolling and have therefore not violated any of the statutes of limitations raised by the Defendant.

2. HOLA Preemption

Defendant argues HOLA should preempt the Plaintiffs' claims, as 12 C.F.R. section 560.2 provides for the preemption of state laws which regulate federal savings associations by the Office of Thrift Supervision ("OTS"), and lists those types of state laws which would be preempted under this section. They seek to compare the present case to *Remo v. Wachovia Mortg.*, WL 3448234 (N.D.Cal., 2011), in which this Court found that the allegations were preempted by HOLA due to their having originated from the lending policies of Wachovia.

4

However, this case differs from *Remo* in that the claims in *Remo* related to conduct very different than the conduct alleged in this case. In *Remo*, the conduct underlying the claims was largely related to Wachovia's lending practices–to the servicing of the loan, the refusal to modify the terms of the loan, the crediting (or failure to credit) payments made on the loan, etc. *Remo*, WL 3448234 at *4. Here, the allegations are limited to the bank's failure to *disclose* their practices, as well as to a general duty to refrain from unfair business practices–in other words, while *Remo* was a case arising from the lending practices of Wachovia, the instant case arises from the bank's disclosures and general business conduct, not strictly the lending practices themselves. This case is more appropriately compared to the originating action, *Mandrigues v. World Savings, Inc.*, No. 07-4497, 2008 U.S. Dist. LEXIS 31810, 2008 WL 1701948 (N.D.Cal. Apr. 9, 2008).

The court in *Mandrigues* held that though HOLA preempts state laws attempting to regulate federal banking (listing the specific types of laws barred in 12 C.F.R. section 560.2(b)(9)), the claims brought by the *Mandrigues* plaintiffs were not within the boundaries of HOLA preemption as they were not "specific to a defendant's lending activities," but were, rather, based on "legal duties applicable to all businesses". *Mandrigues*, No. 07-4497 at *2-*3. The same facts arising in this case, the same rationale is appropriately applied.

The Defendant also points to *Silvas v. E*Trade Mortg. Corp.*, 2008 U.S.App. LEXIS 1944 (9th Cir. January 30, 2008) in arguing that HOLA preemption should apply. However, as the court in *Mandrigues* recognized, though "the Ninth Circuit held that HOLA preempted claims for relief under the UCL where the plaintiffs sought to employ the UCL to challenge the adequacy of a federal savings bank's loan disclosures," "*Silvas* also recognizes that HOLA does not preempt UCL claims in which the 'predicated acts were violations of the general legal duties with which every business must comply.' *Silvas*, 421 F.Supp.2d at 1320, citing *Gibson v. World Sav. & Loan Ass'n*, 103 Cal.App. 4th 1291 (2002). Only claims that are specific to a defendant's lending activities, as distinguished from legal duties applicable to all businesses, are preempted under HOLA. Accordingly, at least for pleading purposes,

5

Plaintiffs' state law claims are not subject to HOLA preemption." *Mandrigues*, No. 07-4497 at *3. Accordingly, the claims in this case are not preempted by HOLA.

3. The Fraud Claims

The first argument raised by the Defendant is that the fraud claims are barred by the statute of limitations, which, as discussed above, is undermined by equitable tolling during the pendency of the originating class action suit.

The second argument raised by the Defendant is that affirmative misrepresentation has not been pled with particularity. A claim for fraud under California law requires that a plaintiff plead (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance and (5) resulting damage. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1096 (9th Cir.2007); *see generally* Cal. Civ. Code §§ 1709–10. Deceit by omission is "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710.

Fed. R. Civ. Pro. 9(b) heightens the pleading requirements for fraud, requiring that the Complaint state the time, place and specific content of the fraudulent misrepresentation. *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1385 (N.D.Cal. 1997). The purpose of the specificity requirement is to ensure that an allegation of fraud "averred with enough particularity to give specific notice to defendants of misconduct so that they can adequately defend against the charge and not simply offer a general denial." *Jordan v. Paul Financial, LLC*, 745 F.Supp.2d 1084, 1096 (N.D. Cal. 2010) (citing Fed.R.Civ.P. 9(b); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003)).

The *Jordan* case provides guidance on the application of this specificity requirement to mortgage cases where fraudulent misrepresentation and nondisclosure is alleged. In that case, as in this one, the fraudulent or misleading statements were contained in the disclosures and mortgage documents provided by a bank to a borrower. There, as here, the Complaint did not name specific employees or provide dates more specific than a general time frame wherein the documents were provided and signed. There, the court held that the Complaint

6

was sufficiently specific to survive a motion to dismiss. *Jordan*, 745 F.Supp.2d at 1096. *Jordan* makes it clear that the type of pleading Plaintiffs have filed in this case is within the allowable range of specificity.

The third argument regarding the fraud claims is that the Complaint fails to allege justifiable reliance on the fraudulent disclosures, and therefore lacks a required element. Here, again, *Jordan* provides guidance, holding:

> Plaintiffs have sufficiently alleged reliance by stating that they would have behaved differently had they known about the certainty of negative amortization. *See Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) (reliance for a fraudulent omission can be shown where a plaintiff proves that 'had the omitted information been disclosed, one would have been aware of it and behaved differently'). *Jordan*, 745 F.Supp.2d at 1096.

Here, the Complaint alleges that the misrepresentations "substantially contributed" to Plaintiffs' decision to enter the loan agreement–implying that Plaintiffs would, in fact, not have taken out the loan had they not been mislead. This implication was bolstered by the oral argument heard on this motion, and, under *Jordan*, this element has been sufficiently alleged.

### 4. The TILA Claim

Insofar as the Plaintiffs seek rescission of the loan because of improper TILA disclosures, their claims are barred as a matter of law. As clearly explained in *Delino v. Platinum Community Bank,* 628 F.Supp.2d 1226, 1234 (S.D.Cal. 2009),

> Plaintiff's claim for rescission under TILA fails as a matter of law. Under 15 U.S.C. § 1635(e), "residential mortgage transactions" are excluded from the three-year right of rescission. See also Regulation Z § 226.23(f)(1). A "residential mortgage transaction" is defined by 15 U.S.C. § 1602(w) to include "a mortgage, deed of trust, ... or equivalent consensual security interest ... created ... against the consumer's dwelling to finance the acquisition ... of such dwelling." Plaintiff alleges in the Complaint that the purpose of the mortgage was to finance the purchase of the Property. (Compl. ¶ 14.) Thus, while home equity loans and refinancing transactions would be amenable to rescission, Plaintiff's purchase money mortgage is not. Accordingly, the Court dismisses Plaintiff's claim for rescission under TILA against Defendants Platinum and TB & W with prejudice.

Though the rescission claim is likely barred by the nature of the loan, it is also likely time-barred, as equitable tolling does not apply to rescission under this TILA provision: "§

7

1635(f) completely extinguishes the right of rescission at the end of the 3-year period."
*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412-13, 419, 118 S.Ct. 1408 (1998); *see also Taylor v. Money Store*, 42 Fed.Appx. (9th Cir. 1992). Therefore, any claim for rescission under TILA is dismissed.

There are different statutes of limitations governing rescission and damages claims under TILA, with the former being extendable up to three years and the latter being subject to a one-year statute of limitations, and both running from the time the loan agreement was signed. Therefore, claims for damages under TILA are not be time-barred, as the statute of limitations is subject to equitable tolling, as discussed above. *Zuniga v. HSBC Mortg. Corp.*, 2010 WL 292723, slip op. at *2 (N.D.Cal. 2010).[1]

The Defendant's arguments regarding dismissal of this claim were entirely based upon timing and the proper type of relief requested. The faulty request for relief having been dismissed, and the timing issue addressed above, the Complaint alleges facts sufficient to constitute a violation of TILA.

5. The Unfair Competition Law (Cal. Bus. & Prof. C. Section 17200) Claims

The first point the Defendant makes with regards to these claims, which are all brought under California's Unfair Competition Law ("UCL"), cited in the Complaint as Cal. Bus. & Prof. C. section 17000 *et seq.* and section 17200 *et seq.*, is that there is no valid basis for any claims under section 17100. Section 17100 is, technically, *seq.* to section 17000, but this argument seems rather spurious as there's no real reason to think Plaintiffs intended to bring a section 17100 claim. There's no mention of 17100's subject matter–locality discrimination, loss leaders, rebates, or injury to competitors, etc–mentioned in the pleadings,

---

[1] Most instances of equitable tolling on TILA claims are based on inability by plaintiffs to become aware of the potential claim, but, in this case, the basis would be the reasonable decision of the Plaintiffs to hold off on filing their own case until the class action had proceeded and they had opted out. Because this would be the basis for equitable tolling, all arguments brought by Defendant regarding the Plaintiffs' reasonable diligence (or lack thereof) is irrelevant–whether or not reasonable diligence was exercised is only relevant if equitable tolling would be based on failure to discover the claim, and has no bearing on tolling based on pending litigation.

8

and, as clarified at oral argument, no section 17100 claim was intended by the Plaintiffs. The same is true for a section 17500 claim.

Moving on to the section 17200 claims, UCL claims must be predicated on some other violation of a law, statute or regulation–in order for a defendant to be liable under section 17200, he must have violated some other law.  Here, the law "tethering" the UCL claim is TILA–the Plaintiffs allege that the TILA violations by the Defendant are the unlawful conduct forming the basis for the section 17200 claims. The Defendant contends that the Plaintiffs have failed to allege a TILA claim (relying on their contentions that the claim is time-barred and the proper remedy has not been requested) but, in light of equitable tolling of the one-year limit on filing TILA claims for money damages, the TILA claim is valid and, therefore, so is the UCL claim's tethering.

The Defendant further argues that the UCL claim fails for lack of specificity, improperly using the common law definition of fraud and failing to meet the elevated requirements of Fed. R. Civ. Pro. 9(b). The latter point has already been discussed above, and is likely invalid.  The former point, regarding the definition of fraud, also fails, as conduct is "fraudulent" for purposes of the UCL if it is "likely to deceive." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009).  The Complaint clearly alleges facts stating the disclosures and practices of the Defendant were likely to deceive, so there is no problem with regards to specificity of this claim.

Next, the Defendant raises standing. According to the Defendant, the Plaintiffs have no standing because they have not "suffered injury in fact" and "lost money or property as a result of" the unfair practices challenged by the suit.  While it is true that the Complaint does not explicitly state what the Plaintiffs have lost as a result of the Defendant's conduct, it does clearly state that the Defendant's practices resulted in the Plaintiffs' having spent over $400,000 on a house they would not have been able to afford without the Defendant's loan, and that had they known the true terms of the loan, they may not (or likely would not) have entered into the entire transaction. The reasonable inference here is that the injury to the plaintiffs is the entirety of the purchase, with a substantial down payment now tied to a house

9

1 facing foreclosure. The imminence of the Plaintiffs' inability to pay the loan, too, can be
2 reasonably inferred to be the injury–at present, the Plaintiffs stand to lose their home, the
3 money used as a down payment on the home, and further costs of settling the debt, which
4 now may have been increased substantially as a result of the alleged unclear disclosures by
5 the Defendant. Therefore, they have standing to sue.

6       The Defendant argues that the Plaintiffs are not entitled to rescission (which they seek
7 in the Complaint) unless they are willing to tender the full amount of the debt. The
8 Defendant cites *Periguerra v. Meridas Capital, Inc*., 2010 WL 395932 (N.D.Cal. 2010) for
9 the principle that repayment is required for rescission, and notes that the Complaint does not
10 indicate that Plaintiffs are willing to pay. Therefore, the Defendant is correct that this
11 remedy will not be available. However, to the extent that Defendant has profited from any
12 violation of the law, damages may nonetheless be available.

13 6. The Breach of Contract and Covenant Claims

14       These two claims are pled together, but the motion addresses them separately,
15 beginning with the breach of covenant. Because the same facts are being used as the basis
16 for claiming both breach of covenant and of contract, the Defendant argues that the inclusion
17 of both claims is superfluous and duplicative.[2] In addition, the Defendant highlights the
18 Plaintiffs' failure to perform or excuse their non-performance and argues that they are
19 therefore missing a required element of the claim.

20       With regards to the tort claim of breach of covenant, it can only be based on a
21 contractual breach when there is a special relationship between the parties, which has not
22 been alleged here. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal.App.3d 1371, 1395,
23 272 Cal.Rptr. 387 (1990). Without a special relationship, there can be no tort claim arising
24 from a breach of contract, and therefore no breach of covenant claim.

---

[2]Defendant also makes a number of arguments based on evidentiary rules, claiming that portions of the Complaint's allegations would be barred from admission–these arguments are inappropriate on a motion to dismiss, given the special standard of deference to the Plaintiff's pleadings.

10

With regards to the issue of performance by the Plaintiff, the extent to which the Plaintiff has performed is unclear from the Complaint, which does not discuss performance or excused non-performance. Though counsel advises the Court that the Plaintiffs have continued making payments on their loan, there has been no performance until the debt has been paid, and therefore the Complaint's failure to discuss performance or non-performance fundamentally undermines these claims.

*Motion to Strike*

The essence of the Defendant's motion to strike is the contention that Plaintiffs' failure to allege facts showing (1) corporate direction of the allegedly fraudulent conduct by employees of the bank (2) knowledge and malicious intent on the part of the bank and (3) a sufficiently specific description of the employees with whom Plaintiffs dealt and who, according to Plaintiffs, actually carried out the fraudulent misrepresentation or nondisclosure.

In order for an employer to be held liable for punitive damages, Cal. Civ. Code section 3294(b) requires a showing of advance knowledge on the part of an employer of employee's misconduct and conscious disregard for the impact of the misconduct on others, or authorization of the wrongful conduct by the employee,. The Defendant argues that because of this requirement, the Complaint is defective in its failure to allege facts demonstrating corporate knowledge and ratification of the fraud perpetrated by employees.

Furthermore, Cal. Civ. Code section 3294(a) and (c) require that pleadings include facts demonstrating an "evil motive" on the part of the Defendant, as well as a breach of duty. Defendant argues that the Plaintiffs have not shown such intent or breach, and therefore have not alleged the facts required to support a finding of malice, oppression or fraud. They therefore request that the portions of the Complaint relating to the fraud claim, and the request for punitive damages be stricken.

The Complaint alleges that employees of the Defendant not only misrepresented the terms of the loan to the Plaintiffs, but also provided the Plaintiffs with descriptions of the loan produced by the bank's management, intended for distribution to potential borrowers

11

and therefore certainly sanctioned by corporate management.  It is reasonable to infer that the company sanctioned and directed the conduct of the employees who mislead the Plaintiffs, and even more so to infer that the misleading documents provided to the Plaintiffs were similarly sanctioned.

Insofar as "evil motive" is concerned, the litigation based on these disclosures, which began in 2008, is sufficient to overcome this objection by the Defendant, as it is plausible that the bank knew the disclosures were failing to adequately explain the terms of the loan agreement to consumers.  Additionally, as they stood to profit from the consumers' misunderstanding of the terms, to infer evil motive from the facts alleged in the Complaint is not outside the bounds of reason.

**CONCLUSION**

For the reasons detailed above, all claims for rescission are DISMISSED, the claims of breach of contract and breach of covenant are DISMISSED WITH LEAVE TO AMEND, the motions to dismiss the claims of fraud, violations of TILA, and unfair business practices under Cal. Bus. & Prof. C. Section 17200 are DENIED and the motion to strike is DENIED.  Any amended complaint must be filed by Monday, December 5, 2011.  Failure to file a timely amended complaint shall result in dismissal with prejudice of the relevant claims.

IT IS FURTHER ORDERED that the case management conference now set on November 7, 2011, shall be continued to January 23, 2012. The parties shall meet and confer and file a joint case management statement on or before January 17, 2012.

**IT IS SO ORDERED.**

Dated:  11/3/2011

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT